**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**LUIS ALBERTO LOZADA,**

    **Plaintiff,**

vs.                                      Case No.: 8:14-CV-534-T-27EAJ

**CAROLYN W. COLVIN,[1]
Acting Commissioner of
Social Security Administration,**

    **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to the Social Security Act ("the Act"), as amended, Title 42, United States Code, Sections 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").

After reviewing the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the administrative record, and the pleadings and memoranda submitted by the parties in this case, the undersigned recommends affirming the Commissioner's decision and dismissing this case.[2]

In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence in the record as a whole and comports with

---

[1] The current acting Commissioner of Social Security, Carolyn W. Colvin, is substituted for Michael J. Astrue, former Commissioner of Social Security. See Fed. R. Civ. P. 25(d).

[2] The District Judge referred this matter to the undersigned for consideration and a Report and Recommendation. See Local Rule 6.01(a), M.D. Fla.

applicable legal standards. See 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). If there is substantial evidence to support the Commissioner's findings, this court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner. See Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979).

If the Commissioner committed an error of law, the case must be remanded to the Commissioner for application of the correct legal standard. See Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993). If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then remand to the Commissioner for clarification is required. See Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).

**I. Background**

On July 1, 2012, Plaintiff filed an application for DIB and SSI, alleging disability beginning August 30, 2011. (T 21) Plaintiff subsequently requested to amend the alleged onset date to December 1, 2010. (T 21, 259-260) Plaintiff's application was denied initially and upon reconsideration, and an administrative hearing was held on August 20, 2013. (T 21) Sixty-two years old at the time of the hearing, Plaintiff has at least a high school education and past relevant work experience as a civil drafter. (T 32, 43, 66)

On September 24, 2013, an ALJ denied Plaintiff's application. (T 21-34) The ALJ found Plaintiff had the following severe impairments: diabetes mellitus, history of panic disorder with agoraphobia, and a memory impairment. (T 24) The ALJ also determined that Plaintiff's musculoskeletal and fibromyalgia conditions, as well his blurry vision and hypertension, were non-

severe. (T 24-25)[3] Plaintiff's impairments did not meet or medically equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, App. 1. (T 26) Despite these impairments, Plaintiff was determined to have a residual functional capacity ("RFC") to perform less than the full range of light work with the following limitations: Plaintiff could lift twenty (20) pounds occasionally and lift or carry ten (10) pounds frequently; stand or walk for about six (6) hours and sit for up to six hours in an eight-hour workday, with normal breaks; perform standing or walking in increments of no more than thirty (30) minutes; occasionally climb ladders, ropes, or scaffolds; frequently climb ramps or stairs and balance; and occasionally stoop, kneel, crouch, or crawl. He should avoid even moderate use of hazardous machinery and even moderate exposure to unprotected heights. But Plaintiff retains the ability to understand, remember, and carry out all but complex tasks and instructions. (T 29)

The ALJ found that Plaintiff was not able to perform his past relevant work as a civil drafter (T 32), but had acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy. (T 32) Accordingly, the ALJ concluded that Plaintiff was not disabled during the relevant period. (T 34) On December 31, 2013, the Appeals Council denied review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. (T 1-7)

The medical and other evidence has been reviewed in the ALJ's decision and will not be repeated here except as necessary to address the issues presented.

## II. Analysis

In challenging the ALJ's decision, Plaintiff raises the following grounds for relief: 1) the

---

[3] Plaintiff does not challenge the ALJ's findings as to the non-severity of these impairments.

Appeals Council should have ordered a remand in light of new evidence submitted after the ALJ decision; 2) the ALJ failed to properly evaluate Plaintiff's subjective symptoms; 3) the ALJ failed to properly determine Plaintiff's mental RFC; and 4) the ALJ relied on flawed testimony from the VE.[4]

A.   Plaintiff contends that remand is warranted due to new and material evidence submitted to the Appeals Council.

A claimant generally is entitled to present new evidence at each stage of the administrative process. Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1261 (11th Cir. 2007) (citation omitted). When submitted for the first time to the Appeals Council, new evidence becomes part of the administrative record. Keeton v. Dep't of Health & Human Servs., 21 F.3d 1064, 1067 (11th Cir. 1994). "In reviewing decisions based on an application for benefits, if new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. 416.1470(b). The Appeals Council then considers the entire record, including the new evidence, and will review the ALJ's decision if it is contrary to the weight of the current evidence of record. Smith v. Soc. Sec. Admin., 272 F. App'x 789, 800-01 (11th Cir. 2008) (per curiam) (unpublished) (citation omitted).

If the Appeals Council denies review, the district court may evaluate whether the denial is appropriate under sentence four of 42 U.S.C. § 405(g). Ingram, 496 F.3d at 1269. The court should assess whether the Commissioner's final decision is supported by substantial evidence on the record

---

[4] Plaintiff's arguments are addressed according to the steps in the sequential review process for disability benefits, not in the order presented in Plaintiff's memorandum of law.

as a whole. See id. at 1266-67.

Plaintiff submitted to the Appeals Council medical records from Charles L. Clay, D.O. ("Dr. Clay"). (T 4, 693-98, 702-04)  The records submitted were a Fibromyalgia Impairment Questionnaire, dated September 20, 2013, and treatment notes for an office visit on September 20, 2013 (T 693-98, 702-04).  The Appeals Council received this evidence and made it part of the record. (T 4)  The records were dated September 20, 2013, after the ALJ hearing on August 20, 2013, but before the ALJ rendered his decision on September 24, 2013, which allowed the Appeals Council to consider the evidence.

After considering the new evidence, the Appeals Council denied review, finding the evidence did not warrant changing the ALJ's decision. (T 1)  This finding was appropriate.  While the records were dated September 20, 2013, and therefore constituted "new" evidence, the records were not material.

Dr. Clay's treatment record from Plaintiff's September 20, 2013, office visit indicated the visit was a follow-up related to Plaintiff's diagnosed fibromyalgia and osteoarthritis. (T 702)  Dr. Clay noted Plaintiff was alert, oriented, and in no obvious acute distress, but was very depressed, used a wheeled walker to ambulate, and continued to complain of joint and muscular pain that had no physical basis. (T 702)  But the September 20, 2013, treatment notes were similar to the notes from Plaintiff's July 2, 2013, and August 2, 2013, treatment notes, which indicated Plaintiff was diagnosed with fibromyalgia and osteoarthritis and described Plaintiff's joint and muscular pain (including eighteen (18) tender points), irritable bowel syndrome, vertigo, and depression. The July and August 2013 notes also included a prescription for a wheeled walker with a seat and an application for a disabled person parking permit signed by Dr. Clay. (T 615-19)  The September 20,

2014, treatment notes therefore described nothing materially different than the previous treatment notes and are unlikely to change the ALJ's decision.

In the fibromyalgia questionnaire, Dr. Clay noted that Plaintiff satisfied the American Rheumatological criteria for fibromyalgia and stated that Plaintiff was positive for eighteen (18) tender points, could not walk without assistance, experienced nonrestorative sleep, had IBS, and had severe diffuse pain involving all six (6) quadrants of his body. (T 693-94)  Dr. Clay indicated Plaintiff experienced frequent severe pain (rated an eight (8) on a scale of one (1) to ten (10)) in his lumbosacral spine, cervical spine, thoracic spine, and bilaterally in his shoulders, arms, hands/fingers, hips, legs, and knees/ankles/feet. (T 694-95)  Other than more specifically noting the areas of the body in which Plaintiff experienced pain, this part of the record provides no new information beyond that provided in the July and August 2013 treatment notes, described above. A slightly more detailed description of the areas of Plaintiff's pain, however, is not likely to change the ALJ's opinion in this case, as the previous treatment notes indicated that Plaintiff was positive for eighteen (18) tender points and experienced pain over his entire body. (T 617-18)

Regarding Plaintiff's functional limitations, Dr. Clay opined in the fibromyalgia questionnaire that, in an eight-hour day, Plaintiff could sit for one (1) hour and stand or walk up to one (1) hour.  Plaintiff had to get up frequently and move around and it was necessary or medically recommended that Plaintiff not sit, stand, or walk continuously in a work setting.  Also, Plaintiff required four (4) to five (5) unscheduled rest breaks during an eight-hour day, each lasting ten (10) to fifteen (15) minutes.  Plaintiff could frequently lift or carry up to five (5) pounds, occasionally lift or carry five (5) to twenty (20) pounds, and never lift greater than twenty (20) pounds.  Plaintiff should not push, pull, kneel, bend, or stoop, and should avoid heights.  Plaintiff was incapable of

tolerating even low stress jobs due to his depression, and Dr. Clay checked off "psychological limitations" as a limitation that would affect Plaintiff's ability to work. (T 696-98) Further, Dr. Clay noted that Plaintiff's impairments had lasted or could be expected to last at least twelve (12) months (T 695) and that Plaintiff's described symptoms and limitations existed prior to July 2, 2013[5] (T 698).

However, Dr. Clay did not identify clinical findings supporting the functional limitations he described. Among other things, although he noted Plaintiff was positive for eighteen tender points, Dr. Clay did not describe their severity or other characteristics. And in the space provided for describing the basis for his conclusion that Plaintiff could not tolerate even low stress jobs, Dr. Clay merely wrote, "P[atient] has depression." As described more fully in part B below, the ALJ determined that Plaintiff's allegations of pain, limited functional capacity, and the severity of his anxiety and panic attacks were not fully credible or supported by the record; this determination was supported by substantial evidence. Therefore, Dr. Clay's conclusory functional assessment, without more, would be unlikely to change the ALJ's decision.

Plaintiff also asserts the additional records from Dr. Clay would be likely to change the ALJ's decision to give substantial weight to the RFC assessment by Harry Beecham, M.D. ("Dr. Beecham"), a non-examining, consulting state agency physician. (T 31, 111-12) But Plaintiff's argument is not persuasive. The ALJ determined that prior to March 2013, Plaintiff had unremarkable physical examinations and few, if any, significant functional limitations and that after March 2013, the record supports Plaintiff's difficulty with ambulation. (T 31) The ALJ noted that

---

[5] Dr. Clay actually left the space blank for the question, "what is the earliest date that the description of symptoms and limitations in this questionnaire applies?" but wrote "prior to 07/02/2013" on the line beneath it, a space available for additional comments. (T 698)

7

Dr. Beecham's RFC assessment was dated September 20, 2012, found it supported by medical evidence, and stated that he addressed Plaintiff's difficulty with ambulation in the RFC. (Id.)[6] As the ALJ considered the entire record in determining Plaintiff's RFC and accounted for Plaintiff's difficulties with ambulation which occurred after Dr. Beecham rendered his opinion (T 29, 31), the records are not likely to change the ALJ's decision to give substantial weight to Dr. Beecham's RFC assessment.

Accordingly, as the new evidence is not material and would not likely change the ALJ's decision, remand is not required on this issue.

B.     Plaintiff contends the ALJ failed to properly evaluate Plaintiff's credibility. The ALJ found Plaintiff's allegations of pain and limited functional capacity not fully credible or supported by the evidence. (T 24)  The ALJ also found Plaintiff's allegations about the severity of his anxiety and panic attacks unsupported by the record. (T 30)

Subjective complaints are evaluated according to a three-part "pain standard" used to evaluate a claimant's testimony about pain or other subjective symptoms. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (per curiam).  A plaintiff must show: (1) objective medical evidence of an underlying medical condition; and either (2) the objective medical evidence substantiates the severity of the pain from the condition, or (3) the objectively determined medical condition is of sufficient severity that it would reasonably be expected to produce the pain alleged. Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986) (per curiam).  If the ALJ does not credit a claimant's testimony regarding subjective complaints, the ALJ must "articulate explicit and adequate reasons

---

[6] Regarding ambulation, the ALJ determined that Plaintiff could stand or walk for about six hours in an eight-hour work day, but that he could only do so in increments of not more than 30 minutes. (T 29)

for doing so." Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995) (per curiam). A clearly articulated credibility finding that is substantially supported by the record will not be overturned. Id. at 1562 (citation omitted).

Plaintiff contends that the record shows Plaintiff suffered significant physical problems prior to March 2013, in contrast to the ALJ's finding that, prior to that date, Plaintiff had unremarkable physical exams and few significant functional limitations.[7] (T 31) Plaintiff points to treatment notes from November 2010 and January 2011 showing complaints of back pain.

Although Plaintiff exhibited back pain as early as November 2010, the ALJ noted objective imaging of Plaintiff's lumbar spine in November 2010 was unremarkable, with no acute or chronic compression fracture and only minimal degenerative disc space narrowing. (T 24, 483, 373) A January 2011 examination by Jackie N. Marcelin, ARNP, ("Nurse Marcelin") identified paraspinal tenderness and limited range of motion in the lumbar spine. (T 488) But the ALJ stated that Plaintiff reported no back complaints in October 2011 when he presented to Stuart Goldsmith, M.D., ("Dr. Goldsmith") for elbow pain, and in November 2011 Plaintiff stated he was doing well before he started moving some boxes, which caused his right arm and elbow to hurt again. (T 24, 424-26) The ALJ found it inconsistent that an individual alleging severe back pain and impairment would engage in an activity like moving boxes. (T 24) Further, in October 2012, at an examination by consulting psychologist Angel R. Martinez, Ph.D. ("Dr. Martinez"), Plaintiff did not report any musculoskeletal impairment and had no difficulties sitting, standing, or walking. (T 24, 569, 574)

It was not until March 2013 that the record demonstrated a complaint by Plaintiff of

---

[7] The significance of the March 2013 date appears to be that the ALJ indicated that Plaintiff started to decline at that point and had difficulty with ambulation, which the ALJ addressed in the RFC. (T 29, 31, 594).

longstanding back pain that had recently worsened. Even then, Plaintiff's history showed a lack of treatment such as surgery, injections, or physical therapy. The ALJ noted that in March 2013, an examination by Dr. Goldsmith revealed general tenderness of Plaintiff's paraspinal muscles and limited range of motion when bending forward. (T 24, 592)[8] But Plaintiff reported no radiating symptoms, numbness or tingling, had full strength, and had normal straight leg raising tests bilaterally. (T 24, 591-92) Dr. Goldsmith diagnosed Plaintiff with lumbar facet disease (stable) and recommended back exercises and anti-inflammatory medication. (T 24, 592)  In April 2013, Anthony A. Abouhanna, D.O., ("Dr. Abouhanna") denied Plaintiff's request for a permanent disabled parking permit (T 24, 660), although Jeffrey Watson, M.D., ("Dr. Watson") observed Plaintiff ambulated with a tentative gait and prescribed use of a cane. (T 24, 594) A bilateral arterial Doppler study of Plaintiff's lower extremities in the same month revealed normal results. (T 24, 680)

Regarding Plaintiff's allegations of anxiety and consistent panic attacks, the ALJ found Plaintiff's allegations unsupported by the record. (T 30)  Although Plaintiff complained of panic attacks as often as five times per day (T 30, 68-69), the ALJ properly found this assertion inconsistent with the record, which contained no evidence of crisis interventions or excessive psychiatric treatment.

The ALJ also determined that Plaintiff was able to perform a number of activities of daily living: personal care, attend church, spend time with friends, family, and neighbors, and Plaintiff had never been fired from a job due to problems getting along with others. (T 26, 281-84).

The ability to engage in everyday activities of short duration such as housework or fishing

---

[8] Dr. Goldsmith's treatment note also indicated Plaintiff had trouble with back flexion and significant restrictions in rotational movement. (T 592)

does not disqualify a claimant from receiving disability benefits. Lewis v. Callahan, 125 F.3d 1436, 1441 (11th Cir. 1997). However, the Commissioner may properly rely on a claimant's daily activities, among other evidence, in determining whether a claimant is entitled to disability benefits. Hoffman v. Astrue, 259 F. App'x 213, 219 (11th Cir. 2007) (per curiam) (unpublished) (citations omitted).

The ALJ's decision encompassed a review of the entire record from which the ALJ concluded that Plaintiff's statements about the severity of his impairment were not entirely credible. (T 31) The Court cannot reweigh the evidence as long as substantial evidence supports the ALJ's conclusions, as in this case. As the ALJ clearly articulated reasons for not fully crediting Plaintiff's allegations, and substantial evidence supports the ALJ's credibility determination, this issue does not entitle Plaintiff to relief. See Allen v. Sullivan, 880 F.2d 1200, 1202-03 (11th Cir. 1989) (per curiam).

C.  Plaintiff contends the ALJ failed to properly determine Plaintiff's mental RFC in that the ALJ gave significant weight to the opinion of examining, consulting psychologist Dr. Martinez but rejected, without explanation, certain restrictions found by Dr. Martinez related to Plaintiff's mental functioning.

Dr. Martinez reported that, during his examination of Plaintiff, Plaintiff's level of psychological distress was moderate and anxious and his hands and feet were shaking. But Plaintiff was oriented to person, time, place, state, and name, maintained eye contact, and had normal facial expressions. Plaintiff also engaged in spontaneous conversation, his affect was consistent with the content of the conversation, and he denied problems with compulsions, but reported obsessive thoughts of hurting himself. Plaintiff showed no indication of active delusions, denied suicidal

thoughts, plans, or means, and denied auditory, visual, and olfactory hallucinations. Dr. Martinez found Plaintiff's abstraction skills were poor (he could not explain the meaning of a simple proverb or answer that a banana and apple were both fruits), his concentration skills were fair, and his judgment was good. Plaintiff was also able to care for his personal grooming and hygiene, clean, shop, use a telephone and directories, and drive a car (but with fear). Plaintiff also expressed no fear of leaving his immediate living environment. (T 570-72)

As for Plaintiff's level of functioning, Dr. Martinez noted Plaintiff's immediate recall was good, his long term memory was fair, his remote memory was excellent, and he was able to follow very short and simple instructions. Dr. Martinez opined Plaintiff had difficulties interacting appropriately and communicating effectively with others due to his anxiety and may have difficulty regarding social functioning in a work situation with the public, particularly responding appropriately to persons in authority. Dr. Martinez also explained Plaintiff's symptoms could be difficult to manage at work, as he could be concerned about having a panic attack in front of others, and Plaintiff was likely to have difficulty managing the usual stresses of a job. Additionally, Plaintiff's concentration would be impaired given his worrying and fear of having a panic attack. Further, Plaintiff might not come to work due to agoraphobia, and his avoidance behaviors could make it difficult for him to commute to work. Ultimately, Dr. Martinez opined Plaintiff had marked difficulties in work situations and restricted activities of daily living. (T 572-74)

The RFC describes the most a claimant can do in a work setting despite limitations resulting from the claimant's impairments. Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004). It is based on consideration of the relevant medical and other evidence in the record. Id. The task of determining a claimant's ability to work falls within the province of the ALJ, not a doctor. Cooper

v. Astrue, 373 F. App'x 961, 962 (11th Cir. 2010) (per curium) (unpublished).

Relying on the opinion of Dr. Martinez, which he gave significant weight, the ALJ found Plaintiff capable of understanding, remembering, and carrying out all but complex tasks and instructions. (T 28-29) The ALJ recounted Dr. Martinez's report that, during his examination, Plaintiff had good recall and memory, could focus and had fair concentration, could perform activities of daily living without supervision or direction, and could understand and memorize short, simple instructions without difficulty. (T 27, 570-72)

Plaintiff's argument that the ALJ did not discuss Dr. Martinez's opinion that Plaintiff had marked limitations is refuted by the record. The ALJ stated that Dr. Martinez opined Plaintiff had marked difficulties in work-like situations, but also explained that Dr. Martinez found Plaintiff had a Global Assessment of Functioning ("GAF") Scale score of sixty (60), indicating only mild to borderline moderate restrictions.[9] (T 28, 573) Additionally, the ALJ found such assessment consistent with the opinions of non-examining state agency psychologists Lee Reback. Psy.D. ("Dr. Reback"), and B. Lee Hudson, Ph.D ("Dr. Hudson"). (T 28, 83-100, 103-30)

Plaintiff also contends that the ALJ failed to address certain aspects of Dr. Martinez's opinion that Plaintiff had difficulty interacting appropriately and communicating effectively with others, may have difficulty regarding social functioning in a work situation with the public, may have difficulty managing symptoms at work (due to concern about having a panic attack in front of

---

[9] The GAF scale describes an individual's overall psychological, social, and occupational functioning as a result of mental illness, without considering any impaired functioning due to physical or environmental limitations. Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") at 32 (4th ed. text rev. 2000). A GAF score represents a subjective determination (based on a scale of 100 to 1) of a patient's overall level of functioning. Id. A GAF score of 41–50 indicates serious symptoms; a score of 51–60 indicates moderate symptoms; and a score in the range of 61–70 indicates mild symptoms. Id. at 32–34.

others), was likely to have difficulty managing the usual stresses of a job, may not come to work due to agoraphobia, and may have difficulty commuting to work due to avoidance behaviors. While the ALJ did not address these comments directly, each was based on Plaintiff's allegations of anxiety and panic attacks, which, as described above, the ALJ found unsupported by the record. (T 30) Thus, the ALJ's findings implicitly rejected the portions of Dr. Martinez's opinion identified by Plaintiff.

Ultimately, the ALJ found that Dr. Martinez assessed Plaintiff with mild to no more than borderline moderate mental health restrictions. (T 28)  The ALJ incorporated Plaintiff's mild to borderline moderate health restrictions into Plaintiff's RFC by indicating that Plaintiff retains the ability to understand, remember, and carry out all but complex tasks and instructions. (T 29) Plaintiff has not shown that the ALJ's mental RFC determination is not supported by substantial evidence. The ALJ properly considered the record evidence and weighed and resolved any conflicting evidence.

D.     Plaintiff asserts the ALJ erred by relying on flawed testimony by the vocational expert ("VE") and finding Plaintiff can perform other work.  The ALJ found that Plaintiff was not able to perform his past relevant work as a civil drafter (T 32), but had acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy. (T 32)

Plaintiff contends that in order for the skills acquired from his past relevant work to be transferrable to other occupations, there must be little or no vocational adjustment required. Plaintiff also asserts that the VE did not testify that Plaintiff's skills would transfer with little vocational adjustment.  Plaintiff further contends that the hypothetical to the VE did not contain all of

14

Plaintiff's mental restrictions and that the VE never identified a job that does not involve complex duties and requires little, if any, vocational adjustment.

In order for the VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question to the VE that includes all of a claimant's impairments. Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999) (citation omitted). The ALJ is required to include only limitations that the ALJ finds supported by evidence. See Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1161 (11th Cir. 2004).

Before the ALJ posed a hypothetical, the VE testified that the skills acquired by Plaintiff in his past relevant work as a civil drafter would be transferrable to jobs such as commercial drafter (sedentary exertion level, reasoning level of six(6)), architectural drafter designer (sedentary exertion level, reasoning level of seven (7)), layout and detail drafter (light exertion level, reasoning level of seven (7)), and plotter operator (light exertion level, reasoning level of five (5)). (T 67-68) The VE testified that the identified positions were sedentary or light jobs that were so similar to Plaintiff's past work that he would need to make very little, if any, vocational adjustment. (T 33, 67)

Later, the ALJ posed the following hypothetical to the VE:

> Let's assume that we have an individual of the same education and work experience as the claimant and this individual is 59 to 62 years old. . . .[T]his individual can lift up to 20 pounds occasionally, lift and carry ten pounds frequently, stand and walk for about six hours and sit for up to six hours in an eight-hour workday with normal breaks. And, although the standing and walking can be performed in increments of no more than 30 minutes, okay? Let's assume that this individual should only occasionally climb ladders, ropes or scaffolds, frequently climb ramps and stairs and balance, occasionally stoop and kneel, crouch and crawl. This individual would need to avoid concentrated exposure to extreme cold and vibration and avoid even moderate use of hazardous machinery and even moderate exposure

15

>to unprotected heights. Could that individual with those limitations performs the claimant's past work as described by the claimant . . .?

(T 76-77) The VE responded that such an individual could still perform Plaintiff's past work. (T 77) Next, the ALJ posed a follow-up hypothetical, adding that the individual "is further limited such that they retain an ability to understand, remember and carry out all but complex tasks. That is simple and moderately detailed." (Id.) The VE answered that Plaintiff's past work could not be performed, due to the complex tasks required such as calculating, computing, and measuring, but that the skills would transfer to a data entry clerk job, with a reasoning level of four (4), which would not be complex. (Id.)

Plaintiff's arguments are without merit. As the ALJ posed a hypothetical to the VE properly stating Plaintiff's RFC, and the VE opined that an individual in that hypothetical circumstance could perform work as a data entry clerk, the VE's testimony is supported by substantial evidence. The ALJ properly relied on the VE's testimony in finding that jobs exist at the sedentary level that Plaintiff could perform[10] (T 31) and determining that Plaintiff was not disabled (T 33-34). Remand is not required on this issue.

## Conclusion

The ALJ's decision is supported by substantial evidence and the proper legal principles. The decision of the Commissioner should therefore be affirmed.

Accordingly and upon consideration, it is **RECOMMENDED** that:

---

[10] Although the ALJ did not specifically mention the occupation of data entry clerk in his opinion, the Court finds the omission harmless, as the ALJ concluded that jobs exist at the sedentary level that Plaintiff could perform, given his vocational factors and transferable skills (T 31), and the data entry clerk occupation was the only occupation identified by the VE at the hearing, given a hypothetical individual with Plaintiff's RFC. (T 77)

(1) The decision of the Commissioner be **AFFIRMED** and the case **DISMISSED**, with each party to bear its own costs and expenses; and

(2) The Clerk of Court enter final judgment in favor of Defendant consistent with 42 U.S.C. §§ 405(g) and 1383(c)(3).

**Date: October 30, 2014**

_____
ELIZABETH A JENKINS
United States Magistrate Judge

### NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal. See 28 U.S.C. § 636(b)(1).

Copies to:

Counsel of Record

District Judge