UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

LUIS ALBERTO LOZADA,

    Plaintiff,

v.                                                  Case No: 8:14-cv-534-T-27EAJ

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## ORDER

**BEFORE THE COURT** is the Report and Recommendation of the magistrate judge (Dkt. 17), recommending that the decision of the Commissioner denying Plaintiff's claim for Disability Insurance Benefits and Supplemental Security Income be affirmed. Plaintiff filed objections to the Report and Recommendation (Dkt. 18), to which the Commissioner responded (Dkt. 20). After a *de novo* review, I find that the Commissioner's decision must be reversed and the case remanded based on the administrative law judge's failure to identify jobs Plaintiff could perform considering his residual functional capacity.

A district court may accept, reject, or modify a magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1). Those portions of the report and recommendation to which objection is made are accorded *de novo* review. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3). Objections must "pinpoint the specific findings that the party disagrees with." *United States v. Schultz*, 565 F.3d 1353, 1360 (11th Cir. 2009); *see Leatherwood v. Anna's Linens Co.*, 384 Fed. App'x. 853, 857 (11th

1

Cir. 2010). The report and recommendation is reviewed for "clear error" even in the absence of objections. *Macort v. Prem, Inc.*, 208 Fed. App'x, 781, 784 (11th Cir. 2006).

## I.   PLAINTIFF'S OBJECTIONS

Plaintiff objects to all four findings of the magistrate judge and essentially reargues his original arguments in support of his request to reverse and remand the decision of the administrative law judge ("ALJ"). Plaintiff challenges the magistrate judge's recommendations on four grounds: (1) the ALJ relied on flawed testimony from the vocational expert ("VE") and erred in finding Plaintiff could not perform other work; (2) the ALJ failed to properly determine Plaintiff's mental residual functional capacity ("RFC"); (3) the Appeals Council should have ordered a remand based on new evidence submitted after the ALJ's decision; and (4) the ALJ failed to properly evaluate Plaintiff's credibility.

## II.   STANDARD

In social security cases, the decision of the ALJ is reviewed to determine whether the correct legal standards were applied, *Graham v. Apfel*, 129 F.3d 1420, 1420 (11th Cir. 1997), and if the ALJ's conclusion as a whole is supported by substantial evidence in the record. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). Substantial evidence is "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). The reviewing court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Id.* Legal conclusions of the ALJ, however, are reviewed *de novo*. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

The Commissioner follows a five-step, sequential evaluation process used to determine

whether a claimant is disabled. *Winschel*, 631 F.3d at 1178. The first three steps are whether the claimant (1) is currently engaged in substantial gainful activity; (2) has a severe impairment or combination of impairments; and (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments. *Id.* The fourth step is whether, based on the claimant's RFC, the claimant can perform any of his past relevant work despite the limitations caused by his impairments. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). At the fourth step, the ALJ must consider all of the record evidence in determining the claimant's RFC. *See id.* The final step is whether there are significant numbers of jobs in the national economy the claimant can perform, given his RFC, age, education, and work experience. *Winschel*, 631 F.3d at 1178.

## III. DISCUSSION

### A. <u>Vocational Expert Testimony</u>

Plaintiff argues that the ALJ's finding at step five that Plaintiff could perform work as a commercial drafter, architectural drafter designer, layout and detail drafter, and plotter operator is inconsistent with his finding that Plaintiff's RFC limited him to performing all but complex work.[1] Plaintiff contends that the jobs identified by the ALJ that Plaintiff could perform were inconsistent with the job (data entry clerk) identified by the VE in her response to a second hypothetical posed by the ALJ which included Plaintiff's moderate mental limitations. Further, Plaintiff contends that the ALJ failed to pose a hypothetical to the VE that included his findings on Plaintiff's mental restrictions.

#### *i. Sufficiency of Second Hypothetical*

---

[1] The four jobs listed by the ALJ have a Specific Vocational Profile ("SVP") of 5-7 (Tr. 33). Plaintiff contends that any job with an SVP of 3 or higher involves "complex duties."

Plaintiff's contention that the ALJ's second hypothetical omitted Plaintiff's moderate limitations in maintaining concentration, persistence, and pace, despite the ALJ's finding that Plaintiff's mental impairments caused such limitations, is unpersuasive. "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002). The second hypothetical posed by the ALJ included all of Plaintiff's impairments. Plaintiff's reliance on *Winschel* is misplaced.

In *Winschel*, the Eleventh Circuit recognized that when medical evidence demonstrates that the claimant's ability to work is unaffected by his limitations in maintaining concentration, persistence, and pace, limiting the hypothetical to the type of work he can perform sufficiently accounts for such limitations. *Winschel*, 631 F.3d at 1180-81. Or, the hypothetical is complete if it otherwise implicitly accounts for the limitations. *Id.* at 1181. For example, "when medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work <u>despite</u> limitations in concentration, persistence, and pace, . . . limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations." *Id.* at 1180.

Here, even after finding that Plaintiff has moderate difficulties with regard to concentration, persistence or pace, the ALJ found that Plaintiff has the capacity to perform some work and carry out <u>all but complex tasks and instructions</u>. He included this limitation in the second hypothetical posed to the VE. And this finding is supported by substantial evidence as discussed below in addressing Plaintiff's objections to the ALJ's RFC finding. As such, the second hypothetical posed to the VE by the ALJ, specifying that the VE should assume Plaintiff was limited to "all but complex tasks[,] [t]hat is simple and moderately detailed" sufficiently accounted for Plaintiff's mental

4

limitations. *See Thornton v. Comm'r, Soc. Sec. Admin.*, No. 13-15165, 2015 WL 542323, at *6 (11th Cir. Feb. 11, 2015) (where the ALJ determined that the evidence demonstrated that the plaintiff could engage in simple, non-detailed tasks, despite moderate limitations in concentration, persistence, and pace, the hypothetical specifying that the VE should assume the plaintiff could only perform simple, non-detailed tasks was sufficient).[2]

### ii. Step Five

At step five in the sequential process, the Commissioner must demonstrate that significant numbers of jobs exist in the national economy that can be performed by the claimant. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (citation omitted), *cert denied*, 529 U.S. 1089 (2000); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the ALJ must consider the claimant's RFC and vocational factors such as age, education, and work experience. *Zimmer v. Comm'r of Soc. Sec.*, 211 Fed. App'x 819, 820 (11th Cir. 2006) (citing 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v)). In addition, the ALJ must determine the level of skill a claimant achieved in his past relevant work. *Id.* The ALJ may find that although an individual over 55 (advanced age) cannot perform his past work, he has transferable skills and can perform other jobs. *Id.* However, "[t]he ALJ must articulate specific jobs that the claimant is able to perform, and this finding must be supported by substantial evidence, not mere intuition or conjecture." *Wilson*, 284 F.3d at 1227. Moreover, Program Policy Statement SSR 82-41 states that "[w]hen a finding is made that a claimant has transferable skills, the acquired work skills must be identified, and specific

---

[2] *See also Jacobs v. Comm'r of Soc. Sec.*, 520 Fed. App'x 948, 951 (11th Cir. 2013) ("Here, the ALJ found that the evidence demonstrated that Jacobs retained a limited ability to work despite his depression and associated moderate difficulties in maintaining his concentration, persistence, or pace, and substantial evidence supports this finding. The ALJ's hypothetical question to the VE fully accounted for Plaintiff's moderate difficulties in maintaining his concentration, persistence, or pace by limiting him to one to three step non-complex tasks, consistent with the RFC assessment.").

occupations to which the acquired work skills are transferable must be cited in the State agency's determination or ALJ's decision." SSR 82-41, 1982 WL 31389, at *7.[3]

The ALJ may rely on the testimony of a VE to determine level of skill, whether the claimant has transferable skills, and whether the claimant can perform other jobs. *Winschel*, 631 F.3d at 1180; *Zimmer*, 211 Fed. App'x at 820. A VE's testimony constitutes substantial evidence to support an ALJ's finding that there is sufficient work available in the economy that the claimant can perform if the ALJ poses a hypothetical question to the VE "which comprises all of the claimant's impairments." *Id.* at 1180 (citation omitted). Although the ALJ did just that when he posed the second hypothetical to the VE, his finding that Plaintiff could perform the jobs of commercial drafter, architectural drafter designer, layout and detail drafter, and plotter operator is inconsistent with the VE's testimony that Plaintiff could only perform work as a data entry clerk, a semi-skilled job with an SVP of 4, given Plaintiff's RFC limiting him to all but complex tasks and instructions.

The ALJ has an obligation to develop a full and fair record regarding vocational opportunities available to the claimant. *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988). And the Eleventh Circuit has held that a reviewing court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The VE testified that Plaintiff's skills acquired in his past work as a civil drafter would transfer to other drafting positions in the sedentary range with very little, if any, vocational adjustment, and listed, as examples, the four jobs identified by the ALJ in his decision (Tr. 67). The ALJ then posed a hypothetical to the VE that included only Plaintiff's physical limitations (Tr. 76-

---

[3] According to this Program Policy Statement, "[i]t is important that these findings be made at all levels of adjudication to clearly establish the basis for the determination or decision for the claimant and for a reviewing body including a Federal district court." SSR 82-41, 1982 WL 31389, at *7.

77). The VE again testified that Plaintiff could perform his past work (Tr. 77).

The ALJ posed a second hypothetical that added the following limitation: "this individual is further limited such that they retain an ability to understand, remember and carry out all but complex tasks[,] [t]hat is simple and moderately detailed" (*Id.*). In response to this hypothetical, the VE testified that while Plaintiff could not perform his past work because "it does reflect complex tasking in terms of calculating, computing and measuring, . . . there would be transferability of skills to data entry clerk and that job at an SVP 4 would not be of complex and would be appropriate in my mind." (*Id.*). The VE then testified that nationally, there were approximately 207,000 jobs of this nature and in Florida, approximately 10,000, apparently referring to data entry clerk positions (Tr. 78).

In his decision, the ALJ found that Plaintiff has moderate difficulties with regard to concentration, persistence or pace, (Tr. 26), but that he "has the residual functional capacity to perform less than the Full Range of light work" and "retains the ability to understand, remember, and carry out all but complex tasks and instructions" (Tr. 29). The ALJ also found, consistent with the VE's testimony, that Plaintiff "has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy" (Tr. 32) and listed the four jobs identified by the VE in response to the first hypothetical (Tr. 33). The ALJ did not, however, list the job of data entry clerk. The ALJ did not articulate in his decision a specific basis for concluding that Plaintiff would be able to perform the four jobs he listed, considering the express RFC finding that Plaintiff is only able to perform non-complex jobs. In addition to the VE testifying that she would eliminate past work, the four identified jobs have an SVP of 5 or higher, which corresponds to skilled work that likely involves complex tasks. *See* SSR 00-4p, 2000 WL

1898704, at *3. ("skilled work corresponds to an SVP of 5-9 in the DOT"); 20 C.F.R. § 404.1568 ("Other skilled jobs may require dealing with people, facts, or figures or abstract ideas at a high level of complexity."). Whereas, the position of data entry clerk has an SVP of 4, which corresponds to semi-skilled work.[4] As such, the ALJ failed to specifically cite occupations to which Plaintiff's acquired work skills are transferable, given all of Plaintiff's limitations as expressed in the RFC finding.[5]

The Commissioner argues that because the ALJ recognized at one point in his decision that the VE "opined that jobs existed at the sedentary level, given the vocational factors and transferability" (Tr. 31) and the only sedentary job the VE identified at the hearing following the second hypothetical was that of data entry clerk, the ALJ must have been referring to data entry clerk.[6] However, the ALJ did not make this finding, and it is therefore not clear from his decision that he relied on this portion of the VE's testimony. The Eleventh Circuit has recognized that "[a] court may not accept appellate counsel's *post hoc* rationalizations for agency actions. If an action is to be upheld, it must be upheld on the same bases articulated in the agency's order." *Baker v. Comm'r of Soc. Sec.*, 384 Fed. App'x 893, 896 (11th Cir. 2010) (citing *FPC v. Texaco Inc.*, 417 U.S. 380, 397, 94 S.Ct. 2315, 41 L.Ed.2d 141 (1974)). The Court cannot substitute its judgment for that of the Commissioner and make specific findings the ALJ did not make. *See Dyer*, 395 F.3d at 1210.

---

[4] Plaintiff argues that a job with an SVP of 4 is complex. Plaintiff reads more into the Social Security Ruling 00-4p, 2000 WL 1898704, than appropriate. It does not, as Plaintiff asserts, "take administrative notice that skilled and semi-skilled jobs involve 'complex duties'" (Dkt. 18 at 3-4). Semi-skilled work corresponds to an SVP of 3-4 and is work "which needs some skills but does not require doing the more complex work duties" and is "more complex than unskilled work." 20 C.F.R. §§ 404.1568(b), 416.968(b). This does not necessarily lead to the conclusion that semi-skilled work requires complex duties.

[5] "All functional limitations included in the RFC (exertional and nonexertional) must be considered in determining transferability." SSR 82-41, 1982 WL 31389, at *5.

[6] This statement was made in the RFC portion of the decision.

8

Plaintiff's objection on this ground is therefore sustained.

### B. Plaintiff's Mental RFC

Plaintiff's second objection takes issue with the magistrate judge's finding that the ALJ properly weighed the opinions of the consulting psychologist, Dr. Angel Martinez, Ph.D. The RFC describes "that which an individual is still able to do despite the limitations caused by his or her impairments." *Phillips*, 357 F.3d at 1238 (citing 20 C.F.R. § 404.1545(a)). An ALJ makes the RFC determination based on all relevant medical and other evidence in the case. *Id.* (quoting 20 C.F.R. § 404.1520(e)). "The task of determining a claimant's ability to work is within the province of the ALJ, not a doctor . . . ." *Cooper v. Astrue*, 373 Fed. App'x 961, 962 (11th Cir. 2010).

Plaintiff contends the ALJ did not correctly determine his RFC because he stated that he gave significant weight to Dr. Martinez's opinion, but rejected, without explanation, additional restrictions related to Plaintiff's mental impairment.

Dr. Martinez opined:

> Mr. Lozada does have a mental health condition that would limit his ability to function in a work-like situation. He appears to have difficulties interacting appropriately and communicate [sic] effectively with others due to his anxiety. His symptoms could be difficult to manage while at work. He may be concerned about having a panic attack in front of his coworkers or, worse, his boss or supervisor. He may also have agoraphobia and not come to work. His avoidance behaviors can make it difficult to commute to work. His concentration would be impaired given his worrying and fear of having a panic attack. He may have difficulties socially functioning in a work situation with the public, responding appropriately to persons in authority. He is likely to have difficulties managing the usual stresses of a job.

(Tr. 573). Dr. Martinez diagnosed Plaintiff with panic disorder without agoraphobia (*Id.*). Based on Plaintiff's self-reported history, his interview, and mental status results, Dr. Martinez opined that Plaintiff has "a mental health condition that would result in restrictions of daily living activities are

9

[sic] marked difficulties in a work-like situation" (*Id.*).

Plaintiff's reliance on the ALJ's statement that he "accord[ed] significant weight to the above," which included opinions of Dr. Martinez as well as Dr Ashit Vijapura, M.D., and Dr. Raul Ayala, M.D. (Tr. 27-28), attributes more to that statement than is fairly inferred from the ALJ's reasoning. The ALJ sufficiently explained why he did not adopt certain findings of Dr. Martinez regarding Plaintiff's marked restrictions (see Tr. 27-28). In addition, based on the ALJ's finding that Plaintiff's allegations of anxiety and panic attacks were not supported by the record (Tr. 30), it can be inferred that the ALJ rejected Dr. Martinez's opinions that were based on Plaintiff's self-reported history and subjective complaints.

Further, the ALJ did not disregard evidence about Plaintiff's ability to work and interact with others. Rather, the ALJ observed that despite Dr. Martinez having noted that due to Plaintiff's mental health, he may have difficulties in a work-like situation, Dr. Martinez opined that Plaintiff was capable of performing daily activities, able to understand and follow simple instructions, demonstrated a good understanding of proper social interactions, and demonstrated he is capable of fair reasoning, judgment, and insight (Tr. 27). Moreover, the ALJ noted that Dr. Martinez assessed Plaintiff with a Global Assessment of Functioning ("GAF") Scale score of 60, which indicates borderline moderate to mild restrictions (Tr. 27).[7]

In sum, the ALJ found that Dr. Martinez's opinions regarding Plaintiff's panic disorder and ability to work were not supported by the evidence or Dr. Martinez's own observations. "[T]he ALJ

---

[7] Plaintiff objects to the magistrate judge's reliance on the GAF score. Although the Commissioner has concluded that the GAF scale "does not have a direct correlation to the severity requirements in [the] mental disorders listings," *Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury*, 65 Fed.Reg. 50746, 50764–65 (Aug. 21, 2000), "GAF scores may be helpful in formulating a claimant's RFC." *Thornton*, 2015 WL 542323, at *7.

10

is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir.1985) (quotation marks and citation omitted); *see also* 20 C.F.R. § 404.1527(b) ("[The ALJ] will always consider the medical opinions in [the] case record together with the rest of the relevant evidence . . . receive[d]."). The ALJ's findings and conclusion are supported by substantial evidence and sufficiently articulated. Plaintiff's objection on this ground is therefore overruled.

### C. New Evidence

Plaintiff submitted to the Appeals Council a Fibromyalgia Impairment Questionnaire dated September 20, 2013, as well as treatment notes from a September 20, 2013 office visit with Charles L. Clay, D.O (Tr. 693-98, 702-04). After considering this new evidence, the Appeals Council denied review, finding the "new" evidence did not warrant changing the ALJ's decisions (Tr. 1). Taking issue with the magistrate judge's conclusion, Plaintiff argues that this new evidence was material, not cumulative, and created a reasonable probability that it would change the ALJ's decision.

In general, a claimant is allowed to present new evidence at each stage of the administrative process. *See* 20 C.F.R. § 404.900(b), 416.1470(b); *Ingram*, 496 F.3d at 1261. The Appeals Council must consider the evidence if it is new, material, and "relates to the period on or before the date of the administrative law judge hearing decision." *Id.* New evidence is material if "there is a reasonable possibility that the new evidence would change the administrative outcome." *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987). New evidence must also not be cumulative of other record evidence. *See Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986). If the Appeals Council finds that the ALJ's "action, findings, or conclusion is contrary to the weight of the evidence," including the new evidence, it must grant the petition for review. *Ingram*, 496 F.3d at 1261 (quotation marks omitted).

As the magistrate judge correctly found, Dr. Clay's medical records are not "material" because they were cumulative of his earlier records describing Plaintiff's fibromyalgia and osteoarthritis, which were already in the administrative record. (Tr. 693, 702, 617-618). The September 20, 2013 Fibromyalgia Impairment Questionnaire indicates positive clinical findings of 18 tender points and inability to walk, which is repetitive of the July 2, 2013 treatment note (Tr. 617, 693). Additionally, the prescription Dr. Clay wrote Plaintiff for a standing wheeled walker and the application for a disabled parking permit indicate a determination that Plaintiff had difficulty moving around, which is repeated in his treatment notes (Tr. 615-616, 702).

The ALJ considered Dr. Clay's medical records regarding fibromyalgia and osteoarthritis and concluded that they were not consistent with other medical evidence and Plaintiff's subjective complaints. Specifically, the ALJ recognized 'that the claimant was first assessed by Charles Clay, D.O., with fibromyalgia in July 2013, after exhibiting 18 out of 18 tender points." He found, however, that "the record does not support that the claimant low back disorder or fibromyalgia were severe or existed for 12 continuous months." He noted an essentially unremarkable physical examination "as recently as March 2013," before concluding that "claimant's musculoskeletal and fibromyalgia conditions did not caused (sic) even minimal limitations prior to April 2013; therefore I find them non-severe, at this time" (Tr. 25). And, although Dr. Clay checked the line on the Questionnaire indicating Plaintiff is "incapable of even 'low stress' jobs," he based it on his conclusion that Plaintiff has depression (Tr. 696-97). As discussed, the ALJ did not credit Plaintiff's allegations of pain, functional capacity, or severity of his anxiety and panic attacks and found they were not supported by the record. This determination is supported by substantial evidence.

Under the circumstances, Plaintiff has not demonstrated a reasonable possibility that Dr.

Clay's additional records describing the conditions already described in the record and considered by the ALJ would have changed the ALJ's decision. The "new" records therefore do not meet the test of materiality and Plaintiff's objections are overruled. *See Timmons v. Comm'r of Soc. Sec.*, 522 Fed. App'x 897, 903 (11th Cir. 2013).

### D.  Plaintiff's Credibility

Finally, Plaintiff contends the ALJ erred in discrediting his allegations regarding the intensity, persistence, and limiting effects of his physical problems. Plaintiff also argues that the ALJ failed to provide adequate reasons for discounting Plaintiff's credibility.[8] I disagree.

An ALJ must clearly articulate adequate reasons for discrediting a claimant's allegations of disabling symptoms. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir.2005). A clearly articulated credibility determination supported by substantial evidence will not be disturbed. *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995). In articulating his reasons, "the ALJ need not specifically refer to every piece of evidence, so long as the decision is not a broad rejection which is not enough to enable the district court or this Court to conclude that the ALJ considered [the] medical condition as a whole." *Dyer*, 395 F.3d at 1210–11 (quotation omitted).

Here, the ALJ, summarizing several records in Plaintiff's medical history, found that the record did not support Plaintiff's allegations of pain and limited functional capacity or his allegations regarding the severity of his anxiety and panic attacks (Tr. 24, 30). In addition, the ALJ articulated reasons for not fully crediting Plaintiff's allegations, referring to several reports in his medical

---

[8] Plaintiff also argues, for the first time, that Dr. Clay's records, which were not before the ALJ, substantiates Plaintiff's testimony regarding his physical impairments. As discussed above, Dr. Clay's records were cumulative and not material. This argument is therefore not well taken.

history in concluding:

> I find the claimant's assertions and testimony regarding symptoms, including pain and limited functional capacity not fully credible and not fully supported by the medical evidence of record. The claimant's seemingly exaggerated symptom complaints, little back by evidence, directly question his credibility.

The magistrate judge made thorough findings supporting her recommendation that the ALJ's conclusions are sufficiently articulated and supported by substantial evidence. A *de novo* review of the record demonstrates that she is correct.

Specifically, the ALJ found that Plaintiff's objective medical history contradicted Plaintiff's complaints of pain. The ALJ noted from Plaintiff's medical history, among other things, that Plaintiff's November 2010 lumbar spine imaging results were "essentially unremarkable, reflecting no acute of chronic compression fracture and only minimal degenerative disc narrowing" (Tr. 24). Plaintiff had no lower back complaints during his October 18, 2011 "comprehensive orthopedic evaluation, regarding right elbow pain" (*Id.*). In October, 2012, a consultant examiner noted that Plaintiff "had a normal gait and reported no musculoskeletal impairments" (*Id.*). Dr. Martinez noted that Plaintiff reported "no difficulties sitting, standing, or walking" (*Id.*). Dr. Goldsmith reported in his March 2013 notes that although Plaintiff complained of back pain that worsened "the last couple of months," he had no history of back treatment such as surgery, injections, or physical therapy; except chiropractic services," and reported having no radiating symptoms, numbness, or tingling." He had a "normal gait and used no assistive device" (*Id.*). And Plaintiff's April 2013 arterial Doppler study was normal (*Id.*). The ALJ went on to summarize other aspects of Plaintiff's medical history which supported his determination not to fully credit Plaintiff's testimony.

The ALJ articulated adequate reasons for discrediting Plaintiff's allegations and his reasons

are supported by substantial evidence in the record. Plaintiff's objections to those findings are therefore overruled.

Accordingly,

1. Plaintiff's Objections are **SUSTAINED** *in part* and **OVERRULED** *in part*.

2. The Report and Recommendation (Dkt. 17) is **ADOPTED** *in part* and **REJECTED** *in part*.

3. The decision of the Defendant Commissioner is **REVERSED** and this case is **REMANDED** for further administrative proceedings consistent with this Order.

4. The Clerk is directed to **ENTER JUDGMENT** in favor of Plaintiff consistent with 42 U.S.C. §§ 405(g) and 1383(c)(3).

5. The Clerk is directed to **CLOSE** the file.

**DONE AND ORDERED** this 26th day of February, 2015.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record

15